## STOKER v. BARNES BANKING CO.

No. 6544.   Decided March 4, 1943.   (134 P. 2d 698.)

*Claude T. Barnes,* of Salt Lake City, for appellant.

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for respondent.

WOLFE, Chief Justice.

From a judgment in favor of plaintiff who sought replevin of a stock certificate in the hands of appellant, the latter appeals.

The stock certificate numbered 6647 covered four shares in the Davis-Weber Counties Canal Company. It was agreed, however, by the parties that the rights, if any, of the Barnes Banking Company, the appellant, to certificate 6647 rose no higher than those it may have had in certificate 5400. It is agreed that if it had no lien on No. 5400 it has none on No. 6647. In consequence, we need concern ourselves only with the history of certificate No. 5400 as it comes into the transactions between the Bank and David Stoker, who sold certificate No. 5400 to respondent Clarence Stoker.

The background facts are as follows: On May 16, 1932, David Stoker and his son Alvin gave an unsecured note signed by both for $3,000 to the Barnes Banking Company payable six months after date. On March 20, 1933, when the note was overdue the Bank had a conference with David and Alvin in which it was agreed that if David and his wife would give a new note for $3,000 secured by a mortgage on 7.72 acres of land owned by her and four shares of water in the Davis-Weber Counties Canal Co. which shares were in David's name, the new note would be made payable three years after November 16, 1932, the due date of the extant note. Alvin testified that at this meeting it was also agreed that he was to give a note for $2,100 to the Barnes Banking Company which would consolidate and renew a note for $1,100 and one for $1,000 already held by the Bank, Alvin's father being on the last note of $1,000 as an indorser; that the said $2,100 note was to be secured by a third mortgage on 27 acres of land owned by Alvin; and that his father was to be released from the $1,000 note by omitting his signature on the said $2,100 note.

Alvin enclosed his father's certificate for four shares of canal stock in a letter dated April 6, 1933. Much of the Bank's correspondence was with Alvin who was supposed

to pass it on to his father. On April 10, 1933, the Bank sent Alvin three notes, one for $120, another for $2,100, both to be executed by Alvin and his wife and to be secured by a third mortgage on the 27 acre piece of Alvin's land, and a third note for $3,000 payable three years after date to be executed by Emma and David, the mortgage to be on Emma's 7.72 acres.

Alvin signed and delivered the two notes and executed a third mortgage on his land to secure them. His father, David, did not go on the new $2,100 note. The two notes for $1,100 and $1,000 were surrendered to Alvin. Emma refused to sign the new note for $3,000 or to execute the mortgage on her land. The deal with David and Emma, therefore, fell through, and the Bank, in July of 1933, sued on the $3,000 unsecured note dated May 16, 1932, and obtained judgment thereon. No demand or request was made on the Bank to return the stock certificate.

We do not think a recitation of the facts involving the resort of Alvin and David to the Debtors Relief Statute, nor the effort to raise money through the Federal Reserve Bank to pay off the State's $4,000 mortgage and the $3,000 debt owed by David to the Bank on which judgment was obtained, are material to this decision. The effort resulted in the Federal conciliator who was called in to help make settlement obtaining the certificate for four shares of canal stock, with the Bank's consent, and the borrowing of $400 from the Clearfield Bank. When the Federal Reserve Bank deal fell through, the certificate was sold to Clarence, the plaintiff, for $550—$400 of which went to pay off the Clearfield Bank and $150 to David. A new certificate, No. 6647, was issued to Clarence when he purchased the stock from David. On the Bank's emphatic protest to the conciliator, he returned certificate 6647 with a letter which stated that it should be held by the Bank subject to the rights, if any, which the Bank had in certificate 5400 and no other rights. The only question is: Did the Bank have a lien on certificate 5400?

The Bank contends that it released David from the $1000 note and thus performed as far as it could the consideration for which it was obligated. The reason for the failure of the extension of the $3,000 note to go through was the fault of David for not securing his wife's signature on the new note and mortgage. The plaintiff contends, on the other hand, that the consideration for the 3-year extension and the release of David from Alvin's $1,000 note was a unit consideration and that the Bank was not obligated and should not have accepted the $2,100 note and mortgage from Alvin nor surrendered the $1,100 and the $1,000 notes until or contemporaneous with the delivery to it of the four shares of stock, the mortgage on Emma Stoker's land and the note and mortgage for $2,100 by Alvin. We think the theory of the plaintiff is correct.

Alvin sent in the certificate in his letter of April 6, 1933, but the Bank was only custodian of it awaiting the reception of Emma's note and mortgage. These documents and the certificate should have been delivered to the Bank and it in return should have contemporaneously delivered up the old $3,000 note dated May 16, 1932, and Alvin's $1,100 and $1,000 notes. It knew that David was obligated to obtain the execution of a mortgage by Emma, and that he might fail. It should not have partially fulfilled. The bargain was not a pledge of the certificate of stock for a release of David from the $1,000 note and another separate bargain to extend the $3,000 note by a three-year renewal plus a note and mortgage by Alvin on 27 acres of land, on the one hand, in exchange for an extension to Alvin and David on their respective notes, a release of David from the $1,000 note by a surrender of it and the $1,100 note in return for Alvin's new $2,100 note, on the other hand. The bargain having fallen through and the Bank having had only conditional custody of the water stock certificate awaiting full execution by both sides, and said full execution having failed the stock should have been returned to David or his assignee, Clarence.

Another tenable view is that there were two unit bargains. (1) An agreement to give David a three-year extension on his $3,000 note by refinancing it by accepting another note secured by a mortgage on Emma's property and the four shares of stock—the surrender of the $3,000 extant note to incidentally release Alvin therefrom; and (2) an agreement with Alvin that his two notes of $1,100 and $1,000 were to be consolidated into a $2,100 note secured by a third mortgage on 27 acres of Alvin's land—the surrender of the old notes to incidentally release David from the $1,000 note. Whichever of these views we take, the certificate for four shares of stock was only conditionally delivered into the custody of the Bank. The one untenable concept is that urged by the Bank that the release of David from Alvin's $1,000 can be split off from the other transactions and itself be made a severable bargain.

That the Bank took the same view as that taken by us appears from the "Proof of Unsecured Claim" which it filed in the District Court in the Relief Proceedings of David Stoker about September 10, 1933. In this document the Bank answered "none" to the question reading: "that said creditor has not nor any person by order of said creditor, or to the knowledge or belief of said deponent for the use of said creditor, received any manner of security for said debt whatever (except the following which are the only securities held by said creditor for said debt)." Also in its complaint for recovery on the $3,000 note dated May 16, 1932, it averred that it held no security for said note.

The judgment of the District Court is correct and is affirmed. Costs to respondent.

LARSON, WADE, McDONOUGH, and MOFFAT, JJ., concur.